IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LATONYA BRADFORD, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-2302-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Upon the written consent of the parties, this case was transferred to the United States Magistrate Judge for the conduct of all proceedings and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

## I. BACKGROUND

**A.  Procedural History**

Latonya Bradford seeks judicial review of a final decision by the Commissioner of Social Security denying her claim for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act (Act). On April 18, 2007, Plaintiff applied for SSI, claiming that she had been disabled since April 1, 2005, due to high blood pressure and depression. (Tr. at 107-09, 125).[1] Her application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 53-59, 63-68). On February 16, 2010, the ALJ issued his decision finding Plaintiff not disabled, which Plaintiff timely appealed to

---

[1] "Tr." refers to the transcript of the administrative proceedings.

1

the Appeals Council. (Tr. at 8-19). The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1-5). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g). The cause is now before the Court on the parties' Motions for Summary Judgment. (Docs. 17, 21). Based on the relevant pleadings, evidence, and applicable law, the decision of the Commissioner is **REVERSED** and the case is **REMANDED**.

B.  **Factual History**

   1.  **Age, Education, and Work Experience**

Plaintiff was born on May 14, 1971, and was 38 years old at the time of the ALJ's decision. (Tr. at 8, 107). She has a ninth grade education, and prior work experience as a cashier/cook and a home health aide. (Tr. at 129, 167).

   2.  **Documentary Medical Evidence**

On June 21, 2006, Plaintiff was examined by psychologist Dr. Barbara Fletcher to determine her mental status for disability purposes. (Tr. at 232). Dr. Fletcher reported: Plaintiff's speech was unclear; Plaintiff did not suffer from looseness of association, delusions, overvalued ideas, obsessions, or illogical thinking; Plaintiff's mood was depressed and her affect was appropriate; and Plaintiff was able to remember 3 objects for 5 minutes, repeat 3 digits forward and backward, count backward from 21, and spell her first name backward. (Tr. at 235). Dr. Fletcher diagnosed Plaintiff with Major Depressive Disorder (single episode, moderate severity), with a Global Assessment of Functioning (GAF) score of 54. (Tr. at 236). Dr. Fletcher noted, however, that Plaintiff's affected symptoms should improve with treatment. *Id*.

On December 31, 2008, after being referred by her attorney, Plaintiff saw psychologist

George Mount. (Tr. at 326). Dr. Mount administered a Wechsler Adult Intelligence test to Plaintiff, which indicated Plaintiff's scores of 59 for her verbal IQ, 56 for her performance IQ, and 53 for her full scale IQ. (Tr. at 327). Dr. Mount noted that all of Plaintiff's scores were in the mild "MR" range. (Tr. at 328). In addition, Dr. Mount noted that Plaintiff's scores on the Wide Range Achievement test suggested Plaintiff's inability to use her reading, spelling, and arithmetic skills in every day society. (Tr. at 328).

On July 30, 2008, Plaintiff was involved in a car wreck and was taken by ambulance to Methodist Hospital. (Tr. at 171, 280). During the accident, Plaintiff's arm was crushed when the car she was riding in rolled over, and she sustained "open fractures of the left radius and ulna with exposed bone the ulna and tendon with injury to the extensor tendons." (Tr. at 280). Two days later, Plaintiff underwent surgery on her left hand, wrist, and forearm. (Tr. at 282). The surgery entailed the debridement of skin, subcutaneous tissue, muscle and tendon in the left hand/wrist/forearm. (Tr. at 282). On August 4, 2008, Plaintiff underwent a second surgery on her left hand/wrist/forearm that included irrigation and debridement, and Plaintiff was given a short-term splint. (Tr. at 284). Plaintiff underwent a third surgery on August 8, 2008, that involved the repair of the extensor digitorum communis tendon, closing of the wound, and the placing of a skin graft over her forearm and hand. (Tr. at 286).

Thereafter, Plaintiff began physical therapy; however, she continued to feel burning and aching in her palms and fingers, as well as occasionally experiencing numbness or a cold feeling in her fingers. (Tr. at 278, 295). An x-ray on October 8, 2008, showed Plaintiff's left forearm had suffered "advanced degenerative change . . . involving the carpals and radiocarpal joint space." (Tr. at 321). Another x-ray administered on December 9, 2008, showed that "there is moderate

disuse osteoporosis seen in the distal forearm and wrist and hand." (Tr. at 323).

On several occasions, Plaintiff's doctors also noted that she suffers from hypertension, gout, and chronic bronchitis. (Tr. at 240, 335, 338-39, 344-48, 351-52). In addition, Plaintiff's treating physician, Dr. Molina, also noted that Plaintiff suffers from anxiety. (Tr. at 343-50).

### 3.     Hearing Testimony

The ALJ held a hearing on December 8, 2008, where Plaintiff and a vocational expert testified. (Tr. at 26). Plaintiff was represented by counsel, and testified that she is 5 feet tall and weighs 177 pounds. (Tr. at 43). While in school she learned to read and write "a little bit" and attended one special education class for speech. (Tr. at 32-33). Plaintiff dropped out of school because she had a baby. (Tr. at 26, 32). She has never worked for a long period of time and her main source of income is a $465 social security check she receives because her daughter's father is deceased. (Tr. at 33-34). Plaintiff averred her impairments include high blood pressure that makes her "pass out," an injury to her left arm, and depression. (Tr. at 34-35). Plaintiff has taken Zoloft for her depression; however, at the time of the hearing, Plaintiff had not been treated for her depression since 2006, and was not being treated for high blood pressure because she did not have insurance. (Tr. at 35-37). Plaintiff stated she was "handling" her depression and was not taking antidepressant medication. (Tr. at 44). In addition, Plaintiff was no longer experiencing blackout spells due to her blood pressure. (Tr. at 44-45). She was prescribed Lisinopril for her blood pressure, but "could not get it." (Tr. at 45).

Plaintiff's arm injury is a result of a car accident that occurred on July 30, 2008. (Tr. at 34, 28). As of the hearing, Plaintiff's hand had been swollen since the accident and she testified she feels pain from her hand to her elbow, for which she was taking hydrocodone. (Tr. at 38-40,

46-47). She started going to therapy for her hand about four weeks before the hearing, and as of that time, Plaintiff did not have use of her injured arm. (Tr. at 41-42). Before Plaintiff's accident, she was not working only because she had to take care of her six children; and she testified that she believed her disability started when she injured her arm. (Tr. at 42-43, 45). Since Plaintiff hurt her arm, her oldest child helps her with the younger children. (Tr. at 45-46). Plaintiff's days include watching TV and she tries to do as much as she can with her hand, including combing her and her daughter's hair. (Tr. at 46). In addition, Plaintiff is able to cook one-handed. (Tr. at 46).

Ms. Malloy, a vocational expert, next testified that Plaintiff is a younger individual with limited education, who was basically self-employed in 2003-2004 when she was working as a housekeeper. (Tr. at 47-49). The ALJ then asked Ms. Malloy if there would be jobs that a claimant like Plaintiff could perform, in light of her age, education and work experience, involving only light exertion, and with the limited use of her left, non-dominant hand only as a helper hand, and not to actively grasp or manipulate objects. (Tr. at 49). Ms. Malloy responded that jobs based on the ALJ's hypothetical do exist; specifically jobs as a hostess, movie usher, and children's attendant. (Tr. at 50). In addition, Ms. Malloy opined that if the hypothetical person were to miss at least three days of work a month because of pain or other limitations, being able to retain one of the listed jobs would be at risk. (Tr. at 50-51).

**C.     ALJ's Findings**

The ALJ found Plaintiff had not engaged in any substantial gainful activity since April 10, 2007, the application date. (Tr. at 13). Plaintiff had the severe impairments of hypertension, depression, and a crush injury to the left distal forearm and wrist. (Tr. at 13). The ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled

one of the listed impairments in 20 C.F.R. Part 404. (Tr. at 13). She determined Plaintiff had the Residual Functioning Capacity ("RFC") to perform work of light exertion, in that Plaintiff could maintain work where she would be required to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk at least 6 of 8 hours, and sit at least 6 of 8 hours. (Tr. at 14). The ALJ further found Plaintiff could use her left hand only as a helper hand, but not for grasping and fingering. (Tr. at 14). Additionally, the ALJ held that Plaintiff could perform simple, routine work. (Tr. at 14). The ALJ concluded that, although Plaintiff was not able to perform her past relevant work, she was not disabled as defined by the Act because she could perform other jobs that exist in significant numbers in the national economy. (Tr. at 18).

## II. ANALYSIS

A. **Legal Standards**

1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible

evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

**2.      Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.

7

*Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.      Issue for Review**

*Did the ALJ fail to apply the appropriate legal standard at Step 2 when determining which of Plaintiff's impairments were severe?*

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Charlton v. Astrue*, No. 10-CV-0056, 2010 WL 3385002 at *6 (N.D. Tex. July 14, 2010). A literal application of these regulations is inconsistent with the Act because the definition includes fewer conditions than indicated by statute. *See Stone v. Heckler*, 752 F2d 1099, 1104-05 (5th Cir. 1985); *Charlton*, 2010 WL 3385002 at *6-7. Therefore, the Fifth Circuit holds that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone*, 752 F.2d at 1101; *Charlton*, 2010 WL 3385002 at *6-7. Further, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Stone*, 752 F.2d at 1104; *Charlton*, 2010 WL 3385002 at *6-7.

In *Stone*, the Court of Appeals for the Fifth Circuit held that it would assume that the "ALJ

and Appeals Council have applied an incorrect legal standard to the severity requirement unless the correct standard is set forth by reference to [the Stone opinion] or another of the same effect, or by an express statement that the construction we give to 20 C.F.R § 404.1520(c) is used." *Stone*, 752 F.2d at 1106. Nevertheless, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Brown*, 785 F.2d 1308, 1311 (5th Cir. 1986); *Charlton*, 2010 WL 3385002 at *6-7 (citation omitted). Unless the correct standard of severity is used, the claim must be remanded to the Commissioner for reconsideration. *Stone*, 752 F.2d. at 1106.

Here, the ALJ cited the *Stone* opinion. Nonetheless, when setting out the law in her opinion, the ALJ stated that an "impairment or combination of impairments is 'severe' within the meaning of the regulations it if significantly limits an individual's ability to perform basic work activities." (Tr. at 12). This is the very standard set forth in 20 C.F.R. §§ 404.1520(c), 416.920(c), that *Stone* found to be inconsistent with the Social Security Act. *Stone*, 752 F.2d at 1104-05; *Charlton*, 2010 WL 3385002 at *6. The ALJ also stated that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work." (Tr. at 12) (citing to 20 C.F.R. § 416.921; SSRs 85-28, 96-3p, 96-4p). The "minimal effect" standard is also wholly inconsistent with *Stone*. *See Charlton*, 2010 WL 3385002 at *6; *Ruby v. Astrue*, No. 3:08-CV-1012, 2009 WL 4858060 at *8 (N.D. Tex. Dec. 14, 2009).

The United States District Court for the Northern District of Texas is uniform in its refusal to find that the standard applied in this case is the standard set out in *Stone*. *See Ruby*, 2009 WL

4858060 at *8; *Charlton*, 2010 WL 3385002 at *6-7; *Roberson v. Astrue*, No. 3:10-CV-0240, 2010 WL 3260177 at * 9-10 (N.D. Tex. Aug. 17, 2010); *Sanders v. Astrue*, No. 3:07-CV-1827, 2008 WL 4211146 at *7 (N.D. Tex Sept. 12, 2008). The ALJ's standard recognized that a non-severe impairment could have a minimal effect on Plaintiff's ability to work, while *Stone* holds that a non-severe impairment would not be expected to interfere with Plaintiff's ability to work. *Foster v. Astrue*, No. H-08-2843, 2010 WL 1340671 at *12-13 (S.D. Tex. March 30, 2010). Although the United States District Court for the Northern District of Texas has recognized that the difference between the two statements may appear to be slight, the ALJ's construction is not an express statement of the *Stone* standard. *Ruby*, 2009 WL 4858060 at * 8.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of the parties have been affected." *Roberson*, 2010 WL 3260177 at * 10 (citations omitted). However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error. *Id*. The Fifth Circuit has left the lower courts no discretion to determine whether such an error is harmless. *Id*. Rather, in *Stone*, the Fifth Circuit mandated that, "unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106.

A case will not be remanded simply because of the use or non-use of "magic words," but will be remanded only where, as here, there is no indication the ALJ applied the correct standard. *Hampton*, 785 F.2d at 1311. Thus, we must read the opinion of the ALJ carefully to ensure he or she used the "slight impairment" standard in the nonseverity determination. *Id*. While the ALJ cites to *Stone*, the standard cited is not the standard used in *Stone*, but rather the standard *Stone* found to be inconsistent with the Act. At the very least, the express recitation of a standard

10

inconsistent with the *Stone* standard creates an ambiguity and this ambiguity regarding whether the correct legal standard was used must be resolved at the administrative level. *Charlton*, 2010 WL 3385002 at *7; *Roberson*, 2010 WL 3260177 at *10.

Here, Defendant argues that this case is distinguishable because the ALJ found all of the impairments raised by Plaintiff to be severe. (Doc. 22 at 10). As Plaintiff correctly notes, however, there were other medical conditions raised by the evidence that were not addressed in the ALJ's findings. (Doc. 23 at 4-5). The Court does not suggest that any of these other conditions, separately or in combination, constitute severe impairments, and only concludes that the ALJ must make precisely that determination while applying the correct standard.

Therefore, Fifth Circuit precedent requires that this case be remanded because the ALJ applied an incorrect legal standard of severity at Step 2. *Stone*, 752 F.2d at 1106. Because remand is required for failure to apply the proper severity standard at Step 2, the Court need not consider Plaintiff's other issues for review.

### III. CONCLUSION

Plaintiff's Motion for Summary Judgment (Doc. # 17) is GRANTED, Defendant's Motion for Summary Judgment (Doc. # 21) is DENIED, and the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED** on April 4, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE